ALBERT VICTOR MILLS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mills v. Commissioner
Docket No. 26448-89
United States Tax Court
T.C. Memo 1991-592; 1991 Tax Ct. Memo LEXIS 642; 62 T.C.M. (CCH) 1345; T.C.M. (RIA) 91592; December 2, 1991, Filed *642 Decision will be entered pursuant to Rule 155. Albert Victor Mills, pro se. Robert E. Savage, for the respondent. BUCKLEY, Special Trial Judge. BUCKLEY
MEMORANDUM OPINION This case was heard pursuant to section 7443A(b) and Rule 180 et seq. [1] Respondent determined a deficiency in petitioner's 1983 Federal income tax in the amount of $ 2,937, together with additions to tax under section 6653(a)(1) and (2) in the respective amounts of $ 99.65 and 50 percent of the interest due on $ 1,993. After concessions, [2] the issues for decision are: (1) Whether petitioner is entitled to a charitable contribution deduction for the gift of a Corvair Monza, and if so, at what value, (2) whether petitioner is entitled to a claimed business bad debt deduction, (3) whether petitioner used a portion of his personal residence *643 exclusively for a home office, and (4) whether petitioner received unreported income for 1983, and, if so, in what amount. Some of the facts have been stipulated and are so found. The stipulation of facts and supplemental stipulation, as well as the accompanying exhibits of both, are incorporated herein by reference. Petitioner filed his 1983 tax return as a single taxpayer. At the time he filed his petition to this Court, petitioner resided at Sunnyvale, California. For ease of presentation we set forth the facts and legal discussion of each issue separately. With respect to each issue, the burden is upon petitioner to disprove *644 the correctness of respondent's determination. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933). The charitable contribution deduction. Petitioner claimed a charitable contribution deduction totaling $ 5,863 for tax year 1983. The only item at issue is the value of a 1966 Chevrolet Corvair Monza Coupe which petitioner donated to Goodwill Industries. Petitioner valued the automobile at $ 3,103 for purposes of the charitable contribution deduction. Respondent determined that petitioner had not substantiated the value of the automobile deducted and disallowed the entire $ 3,103 amount. There is no question that the automobile was donated to Goodwill in 1983, or that the donation qualifies as a charitable contribution under section 170. At trial, counsel for respondent conceded that the automobile had at least a fair market value of $ 1,000 when donated by petitioner. Under section 1.170A-1(c)(1), Income Tax Regs., "If a charitable contribution is made in property other than money, the amount of the contribution is the fair market value of the property at the time of the contribution." Fair market value is defined as "the price at which the property *645 would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having a reasonable knowledge of relevant facts." Sec. 1.170A-1(c)(2), Income Tax Regs.
Petitioner argues that the fair market value of the 1966 Corvair, at the time donated, was at least $ 3,103, the amount of the claimed charitable contribution. In support thereof he produced several pages excerpted from a December 1983 issue of Hemmings Motor News; a publication in which vintage automobile collectors advertise cars for sale. The Chevrolet Corvair, manufactured in the 1960s, is considered by many to be a vintage car. The prices advertised in the December 1983 issue of Hemmings Motor News for automobiles of the same make, and comparable year and model, as the car donated by petitioner ranged from $ 400 for a 1968 Corvair in need of restoration to $ 5,000 for a restored 1964 Corvair. Advertised sales prices, while relevant, are not particularly probative of the amounts that might be received in an arm's-length sale. Typically, such offers are subject to substantial negotiation between buyer and seller. We nevertheless deem the evidence somewhat helpful *646 to our decision. The Corvair was a convertible, a feature petitioner contends enhanced the car's value. The vehicle had 65 to 75,000 original miles, and the paint and interior of the car were original. Petitioner, however, adduced no evidence on the condition of the automobile at the time donated, e.g., the state of repair or disrepair of the exterior and interior of the car, including the engine. On this record we find the car's fair market value at the time contributed to have been $ 1,500, and hold that petitioner is entitled to deduct that amount as a charitable contribution for 1983. The business bad debt deduction. From about 1976 through 1985, petitioner owned a two-unit rental property. During 1983, he encountered problems with the collection of rent from tenants occupying both units, leading ultimately to their eviction. Petitioner claimed a bad debt deduction on his 1983 tax return in the amount of $ 2,003. Respondent determined that $ 808 of this amount was properly deductible as repair expense and allowed that amount in the notice of deficiency. The remaining amount of bad debt expense, $ 1,195, is attributable to uncollectible rents, which respondent disallowed. *647 Petitioner, a cash basis taxpayer, did not include this $ 1,195 in income for 1983 or any prior year. Section 166 provides that a deduction is allowed for any debt which becomes worthless within the taxable year. However, "Worthless debts arising from unpaid wages, salaries, fees, rents, and similar items of taxable income shall not be allowed as a deduction under section 166 unless the income such items represent has been included in the return of income for the year for which the deduction as a bad debt is claimed or for a prior taxable year." Sec. 1.166-1(e), Income Tax Regs. See also Gertz v. Commissioner, 64 T.C. 598 (1975). Petitioner never included the $ 1,195 of unpaid rents in income, and is not entitled to deduct the amount as a bad debt expense for 1983. We sustain respondent on this issue. The home office expense deduction. During 1983 petitioner engaged in the business of managing rental properties, his own property and properties owned by others. The business involved maintaining the buildings and grounds, renting vacant units, collecting rents, and providing bookkeeping services. On his 1983 return, petitioner deducted expenses of maintaining *648 an office at home totaling $ 720. Respondent disallowed the deduction on the basis that petitioner did not make exclusive use of any area of his home for business purposes. The expense of maintaining an office at home is deductible if incurred in connection with a trade or business or for the production of income (sections 162 and 212), so long as the use of the home office comports with section 280A. Respondent concedes that petitioner conducted business at home, but argues that there was no exclusive business use of any portion of petitioner's home on a regular basis, as required by section 280A(c)(1)(A). During 1983 petitioner resided in a small apartment for which he paid a monthly rent of about $ 295. Petitioner kept tools, equipment, paint supplies, and a filing cabinet, all of which were used in the business, in an office/storage area of the apartment. Petitioner frequently conducted business-related work in the bedroom and living room areas of the apartment. He estimated that approximately 20 percent of the apartment was used for business purposes and computed the $ 720 amount of home office expense by applying that percentage to a rounded monthly rent figure of $ 300, *649 multiplied by 12 months. The floor plan of petitioner's apartment indicates a total area of 422 square feet allocated as follows: Percentage
Sq. Footage
of Total
Bedroom
120
28
Bathroom
80
19
Vestibule
30
7
Living room/
Kitchen
96
23
Office/Storage
area
96
23
Totals
422
100
We agree with respondent's contention that petitioner did not make exclusive use of the bedroom and living room areas of the apartment for business purposes. However, we note that petitioner did not claim a deduction for these areas. We find that petitioner did make exclusive business use of the office/storage area on a regular basis. Petitioner's annual rent for 1983 was $ 3,540 (12 months X $ 295). Since the office/storage area comprised 23 percent of total apartment square footage, the allocable amount of home office expense is $ 814 (23 percent of $ 3,540). Petitioner's claimed home office expense deduction did not exceed this amount, and we therefore hold for petitioner on this issue. The amount of underreported income. Respondent determined that petitioner incorrectly excluded interest and dividend income for taxable 1983. Petitioner concedes the amount of interest *650 and dividend income determined by respondent. Respondent also determined that petitioner failed to report income received from the General Electric Company (GE). Sometime prior to 1983, petitioner was employed by GE and participated in the GE Savings & Security Trust plan (sometimes hereafter referred to as the Plan). The record explains little about the nature of the Plan. While an employee, petitioner contributed to the Plan, and purchases of certain mutual fund shares and GE stock were made on his behalf. According to respondent's computer files of third party payer information, GE reported via Form 1099-R that a taxable distribution of $ 1,858 had been made to petitioner in 1983 from the GE Savings & Security Trust, and that withholding taxes of $ 178 were remitted. In the notice of deficiency issued to petitioner, the $ 1,858 was added to taxable income and a withholding credit of $ 178 was allowed. Petitioner never received a Form 1099 from GE. Although he recalled receiving a distribution in January 1983 of GE stock, he contends the distribution was nontaxable. Included as part of the record of this case is a letter from GE indicating that its records reflect a distribution *651 to petitioner on January 3, 1983, of various securities valued at $ 2,935.46. The letter further indicates that $ 1,077.37 of that amount represented a return of petitioner's investment, leaving a taxable distribution of $ 1,858.09. GE's records also indicated that taxes were withheld on the distribution in the amount of $ 178.16. On the basis of this record, we hold in favor of respondent on this issue. Petitioner's subsequent argument that this amount constituted deferred compensation not taxable until the securities were sold has no merit. The $ 1,858 amount distributed by GE in 1983 was taxable to petitioner in that year. To reflect the foregoing and concessions, Decision will be entered pursuant to Rule 155. Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code as amended and in effect for the year at issue; Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner concedes he is not entitled to deduct $ 1,042 of rental property repair expenses claimed. He also concedes that he incorrectly claimed a $ 400 exclusion from interest income and a $ 400 exclusion from dividend income. Respondent concedes the additions to tax. Respondent also concedes $ 808 of the claimed bad debt expense should be allowed as a part of repairs expense.↩